IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-HC-2100-FL

| | | |
|---|---|---|
| CHRISTOPHER MINOR, Petitioner, | ) | |
| v. | ) | ORDER |
| LESLIE COOLEY-DISMUKES, Respondent. | ) | |

Petitioner, a state inmate proceeding pro se, petitions this court for a writ of habeas corpus under 28 U.S.C. § 2254. The matter is before the court on respondent's motion to dismiss (DE 31) under Federal Rule of Civil Procedure 12(b)(6). Petitioner responded. Also before the court are various motions filed by petitioner. In this posture, the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

On December 1, 2023, petitioner was convicted following a bench trial in Franklin County Superior Court of robbery with a dangerous weapon and second-degree kidnapping. See State v. Minor, No. COA22-845, 2023 WL 8433483, at *2. The trial court sentenced petitioner to 75 to 102 months' imprisonment for the robbery conviction, followed by 26 to 44 months' imprisonment for the kidnapping conviction. (Resp's Mem. Ex. 1 (DE 32-2) at 2-5).

Following imposition of the sentence, petitioner appealed his convictions to the North Carolina Court of Appeals. On direct appeal, petitioner argued that his kidnapping conviction should be vacated because there was insufficient evidence of restraint beyond that inherent in the robbery. Alternatively, if trial counsel failed to preserve the insufficient evidence issue for appellate review, then ineffective assistance of counsel. (Resp's Mem. Ex. 3 (DE 32-4) at 22-

37). In an unpublished opinion filed December 5, 2023, the North Carolina Court of Appeals affirmed the trial court's judgment and concluded petitioner did not receive ineffective assistance of counsel because the issue was properly preserved for appellate review. Minor, 2023 WL 8433483, at *3-4. Petitioner did not seek review of these issues in the North Carolina Supreme Court. (See Amend. Habeas Pet. (DE 4) at 2-3).

While petitioner's direct appeal was ongoing, he filed various petitions and letter motions in Franklin County Superior Court, which were denied. (See Resp's Mem. Ex. 7 (DE 32-8) at 2-3; Ex. 8 (DE 32-9) at 2-3; Ex. 10 (DE 32-11) at 2-3). On June 3, 2024, petitioner filed a petition for writ of habeas corpus in the North Carolina Supreme Court arguing that the trial court lacked statutory subject matter jurisdiction and entered judgment not authorized by law. (Resp's Mem. Ex. 11 (DE 32-12) at 3-5). That petition was denied two days later. (Resp's Mem. Ex. 12 (DE 32-13) at 2-3). Petitioner filed another habeas petition with the North Carolina Supreme Court July 11, 2024. (Resp's Mem. Ex. 13 (DE 32-14) at 3-5). That petition was also denied. (Rep's Mem. Ex. 14 (DE 32-15) at 2-4).

On July 29, 2024, petitioner filed a petition for writ of habeas corpus in the Franklin County Superior Court arguing the trial court lacked subject matter jurisdiction and entered judgments not authorized by law. (Rep's Mem. Ex. 15 (DE 32-16) at 3-5). This petition was denied the same day. (Resp's Mem. Ex. 16 (DE 32-17) at 2). On September 17, 2024, petitioner filed various other motions in the Franklin County Superior Court, including another habeas petition making substantially similar arguments. (Rep's Mem. Ex. 17 (DE 32-18) at 3-8). These were also denied. (Resp's Mem. Ex. 17 (DE 32-18) at 2-3).

Finally, on September 30, 2024, petitioner filed another petition for writ of habeas corpus in the North Carolina Court of Appeals, once again arguing that the trial court lacked subject matter jurisdiction and entered judgments no authorized by law. (Resp's Mem. Ex. 19 (DE 32-20) at 2-4). That petition was denied October 2, 2024. (Resp's Mem. Ex. 20 (DE 32-21) at 2).

Petitioner filed this § 2254 petition April 30, 2025. (DE 1). On May 1, 2025, petitioner was directed to file amended petition correcting deficiencies in his original filing. He filed amended § 2254 petition May 12, 2025. (DE 4). Petitioner also filed an "addition to case argument for custody hearing pending habeas consideration" on November 20, 2025. (DE 21). Petitioner broadly asserts these claims: 1) insufficient evidence to meet the statutory requirements for robbery with a dangerous weapon, which petitioner argues creates lack of subject matter jurisdiction; and 2) the prosecution "committed a irreversible impermissively [sic] suggestive pretrial identification of defendant as the culprit," which operates as an "unlawfully established in court identification procedure of no independent origin." (DE 4 at 5; DE 21 at 2).

On January 5, 2026, respondent filed the instant motion to dismiss, supported by memorandum of law and appendix of exhibits including records from petitioner's trial, sentencing, and state post-conviction proceedings. Petitioner responded by filing motion to dismiss respondent's motion, which the court interprets as a response in opposition, supported by appendix of exhibits incorporating by reference various docket entries. (DE 34).

**STATEMENT OF THE FACTS**

The facts underlying petitioner's convictions, as recounted by the North Carolina Court of Appeals, are summarized below:

> On 11 January 2018, Samantha Castagna, an employee of the Dollar General in Louisburg, North Carolina, was restocking the candy shelves at the check-out

counter when a man wearing a black jacket, blue mask, and blue gloves "ran into the store and pointed a gun at [her] face." Castagna testified that the man "told [her] that if [she] did everything that he said[,] [she] wasn't going to f****** die today[.]" At his command, Castagna walked with him "to the register . . . and popped it open."

Fourteen-year-old E.W. approached the counter to check out in the midst of the robbery. E.W. testified that she did not know that the store was being robbed until she "set [her] basket down at the register, . . . looked up[,] and made eye contact with a man with a blue mask on." E.W. "saw [a] black object, which [she] was assuming was a gun" because of "the fact that he pointed at me with it" and "the fact that the store was being robbed." Although her "immediate reaction was to run away[,]" the man "told [her] not to move" and she complied "[b]ecause [she] was scared that [she] would lose [her] life."

Castagna testified that before E.W. arrived at the checkout counter, the man had Castagna "lift up the drawer to make sure there weren't any big bills. . . . And then [E.W.] walked up, and then he pointed the gun at her and told her not to move." Castagna "handed him the money" and the man "just casually . . . walked around and walked out."

Approximately five minutes after the robbery, as Traci Dent and her daughter pulled out of their driveway, they saw an older model [Toyota Camry] come "flying by" them, run "through the stop sign and hit . . . a little embankment" with a stump. The wreck was only about a five-minute drive from the Dollar General. Ms. Dent and her daughter "w[ere] right behind [Defendant] when he wrecked[,]" and they "got out of the[ir] car and . . . immediately called 911." Ms. Dent approached Defendant, who emerged from the car holding a can, from which "he took a swig"; he then "threw [the can] in the car along with the rest of the belongings[,]" "t[ook] his coat off[,] and . . . started walking down the street." Ms. Dent noticed that Defendant would "duck[ ] down" whenever a car drove by, and as traffic increased, he "took a left and started walking really fast."

Officers from the Franklin County Sheriff's Office responded to the robbery at the Dollar General. Detective Ashley Camp testified that the officers "were not there long" when "the car accident came out" and they "immediately started getting phone calls from patrol . . . that, 'Hey, this may be our guy.'"

After Detective Camp reviewed the surveillance video at the Dollar General, she traveled to the scene of the automobile accident, where she saw blue gloves "in plain view" on the passenger-side floorboard. From the Dollar General video, Detective Camp "could tell that the gloves that [the robbery suspect had] on were blue or purple[,]" and therefore, she "thought that this car probably was involved in our armed robbery." Detective Camp also saw the jacket that Defendant had

> thrown into the car before he left the accident scene; she testified that it "looked like [the] jacket" in the Dollar General video, which "was black . . . [and] had a little white lining . . . along the bottom."
>
> Detective Camp and the other officers "decided that [they] should tow [the wrecked vehicle] to the Sheriff's office and secure it . . . to be processed." They then followed the path taken by Defendant as he left the accident scene. Detective Camp testified that they "came across . . . a blue do-rag" in the road that was still clean. She explained that the do-rag was significant because, based on her recollection of the surveillance footage, the robbery suspect was wearing something on his head during the robbery of the Dollar General, and she felt that it was probably the blue do-rag.
>
> Officers obtained a warrant to search the vehicle, and found several items including a jacket, a beer can, blue latex gloves, and "various paper documents bearing [the] name Christopher L. Minor, located on [the] front passenger seat, rear seat, and rear floorboard." DNA testing revealed that the profile of the DNA collected from the beer can "was consistent with the profile . . . collected from [Defendant]" and that the probability of "randomly selecting an individual [whose] profile is consistent with the profile" of DNA taken from the beer can was "one in 290 decillion" for the African-American population. In addition, fingerprints taken from the vehicle's door and the beer can matched Defendant's fingerprint sample.

Minor, 2023 WL 8433483, at *1-2.

**COURT'S DISCUSSION**

A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[1] "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the [petitioner]," but does not consider "legal

[1] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

Similarly, a motion to dismiss a § 2254 petition "tests the legal sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the § 2254 petitioner to be true." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009); see Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). In ruling on a motion to dismiss, the court looks to the record of the state proceeding, including affidavits and evidence presented in such proceedings, as well as other matters of public record. See, e.g., Cullen v. Pinholster, 563 U.S. 170, 180–82 (2011); Walker, 589 F.3d at 139.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court decision "involves an unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. A state court decision also applies

Supreme Court precedent unreasonably if it extends existing precedent to a new context where it does not apply or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the defendant's constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Factual determinations made by state courts are presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

But if the state court does not adjudicate the merits of the petitioner's claims, and the claim is not procedurally defaulted or the respondent fails to assert procedural default, the federal court reviews the claim de novo. Plymail v. Mirandy, 8 F.4th 308, 316 (4th Cir. 2021); Valentino v. Clarke, 972 F.3d 560, 576 (4th Cir. 2020).

B. Analysis

Respondent argues that petitioner's challenges to his conviction are procedurally defaulted. If a state inmate fails to exhaust state court remedies prior to filing a federal habeas petition, and state procedural rules would bar petitioner form asserting the clams if he returned to state court, the claims are procedurally defaulted. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000); see also Coleman v. Thompson, 501 U.S. 722, 749–50 (1991). Procedurally defaulted claims are unreviewable in federal court unless the petitioner shows cause and prejudice, or that failure to review the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; Plymail, 308 F.4th at 316. Respondent bears the burden of pleading

and proving procedural default. See Plymail, 308 F.4th at 316. To successfully invoke the doctrine of procedural default, respondent must establish that "it is clear that the habeas petitioner's claims are now procedurally barred under state law." Gray v. Netherland, 518 U.S. 152, 161 (1996) (cleaned up).

Respondent argues that petitioner's claims are procedurally defaulted because he failed to raise them on direct appeal. Respondent argues this outcome is consistent with North Carolina law because state courts are required to deny a motion for appropriate relief if "the defendant was in a position to adequately raise the ground or issue underlying the present motion [on a previous appeal] but did not do so." N.C. Gen. Stat. § 15A-1419(a)(3). As the United States Court of Appeals for the Fourth Circuit has recognized, "§ 15A-1419(a)(3) is an independent and adequate state ground for purposes of procedural default." Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008). On direct appeal to the North Carolina Court of Appeals, petitioner did not brief any of the claims raised in the instant §2254 petition. (See Resp's Mem. Ex. 3 (DE 32-4) at 22-37). Rather, petitioner only sought review of his kidnapping conviction. (Id.). Neither did petitioner seek discretionary review from the North Carolina Supreme Court.[2]

In responding to the motion to dismiss, petitioner does not address his failure to raise these claims on direct appeal. Respondent also fails to show cause and prejudice, or that failure to review his claims will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750; Plymail, 308 F.4th at 316. For these reasons, petitioner's claims are unreviewable in this habeas action.

---

2 While petitioner filed various, duplicative petitions for habeas relief with the Franklin County Superior Court, the North Carolina Court of Appeals, and the North Carolina Supreme Court, review of these filings show that they failed to raise any substantive legal arguments and were summarily dismissed.

C. Certificate of Appealability

Next, the court considers whether to issue certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief, and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). After reviewing the claims presented in the habeas petition considering the applicable standard, the court concludes reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issues are adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Accordingly, a certificate of appealability is denied.

**CONCLUSION**

Based on the foregoing, respondent's motion to dismiss (DE 31) is GRANTED. Petitioner's outstanding motions (DE 25, 34, 40, 41, 54, and 63) are DENIED as moot. The petition is DISMISSED with prejudice, and a certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 25th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge